Edward J. LoBello
Thomas R. Slome
Jil Mazer-Marino
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
1350 Broadway, Suite 501
New York, NY 10018
Phone: (212) 239-4999
Fax: (212) 239-1311
Attorneys for Kin Chan, as Foreign Representative

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| BERAU CAPITAL RESOURCES PTE LTD, | : | Case No._____ |
| Debtor in a Foreign Proceeding. | : | |

------------------------------------------

**DECLARATION OF KIN CHAN IN SUPPORT OF: (I) VERIFIED PETITION
UNDER CHAPTER 15; AND (II) APPLICATION FOR PROVISIONAL AND FINAL
RELIEF FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING PURSUANT
TO 11 U.S.C §§ 105(a), 1517, 1519, 1520, AND 1521**

Kin Chan, of full age, hereby declares:

1.      I am the Chairman of the board of Asia Resource Minerals plc ("**ARMS**"), a

public company incorporated under the laws of England and Wales, being the ultimate parent

company of PT Berau Coal Energy Tbk ("**BCE**") and Berau Capital Resources Pte Ltd (the

"**Foreign Debtor**"). A true and correct copy of my curriculum vitae is attached as **Exhibit A**.

2.      My office is located at 601-2 St. George's Building, 2 Ice House Street,

Central, Hong Kong.

1

3.      I am the authorized foreign representative of the Foreign Debtor in the above-caption Chapter 15 case.

4.      The Foreign Debtor was incorporated under the laws of Singapore and has its registered address located at 10 Anson Road, #03-05, International Plaza, Singapore 079903.

5.      The Foreign Debtor is a wholly-owned subsidiary of BCE.

6.      BCE has an interest, either directly or otherwise, in a total of 18 entities incorporated in various jurisdictions (the "**BCE Group**").

7.      BCE Group is in the business of the mining and export of thermal coal and is the fifth largest coal producer in Indonesia in terms of production volume. The BCE Group supplies coal domestically and internationally. PT Berau Coal ("**Berau Coal**") (which is beneficially owned 90% by BCE) is the BCE Group's key operating asset. Berau Coal has licenses to conduct coal mining activities in various concession areas in East Kalimantan, Indonesia until April 26, 2025.

8.      The financial and operational condition of the BCE Group has deteriorated in the last 2 years. This is, in part, directly attributable to the decrease in the global demand for coal, which resulted in a material drop in coal prices. The poor financial health of BCE has also been exacerbated by recent attempts to change management and disputes arising therefrom which has adversely effected Berau Coal.

9.      BCE's revenue and EBITDA have declined substantially as a result of the drop in coal prices.

10.     Although BCE and Berau Coal have taken steps to reduce mining costs and optimize key assets in light of the current low coal price environment, including, *inter alia*,

2

by negotiating with its mining contractors and other suppliers to reduce operational costs, moving coal production to pits that provide higher margins for the group and reducing the number of leased barges while at the same time increasing the number of barge cycles, these savings have not been sufficient to compensate for the decline in the selling price of thermal coal. Consequently, BCE Group is challenged in discharging its financial obligations to creditors, in particular under the 2015 Notes (as explained below).

11.     On or about February 9, 2010, the Foreign Debtor was incorporated by BCE as a special purpose vehicle to raise funds for and on behalf of the BCE Group. The Foreign Debtor relies entirely on BCE to discharge its payment obligations.

12.     The Foreign Debtor entered into an indenture dated July 8, 2010, pursuant to which the Foreign Debtor issued $350 million in 12.50% guaranteed senior secured notes due 2015 (the **"2015 Notes"**), in respect of which a further $100 million in principal amount was issued in August 2010 pursuant to a supplemental indenture dated August 24, 2010. The Bank of New York Mellon is the trustee (the "**Trustee**") under the indenture for the 2015 Notes (the **"2015 Notes Indenture"**), that has been amended and supplemented from time to time. The Foreign Debtor's obligations under the 2015 Notes are guaranteed by BCE, PT Armadian Tritunggal (incorporated under the laws of the Republic of Indonesia), Berau Coal, Empire Capital Resources Pte. Ltd. (incorporated under the laws of the Republic of Singapore), Winchester Investment Holdings PLC (incorporated under the laws of the Republic of Seychelles), Aries Investments Limited (incorporated under the laws of the Republic of Malta), Seacoast Offshore Inc. (incorporated under the laws of the British Virgin Islands), Maple Holdings Limited (incorporated under the laws of Labuan), PT Energi Bara Sarana (incorporated under the laws of the Republic of Indonesia), and PT Banua Karsa Mitra (incorporated under the laws of the Republic of Indonesia).

3

13.     BCE and BCR were unable to make the principal repayment in the amount of $450 million due on July 8, 2015, under the 2015 Notes.

14.     Just over eight months ago, Houlihan Lokey was appointed by ARMS and the BCE Group to assist in the formulation and implementation of a plan to restructure the debts of the BCE Group, including the 2015 Notes.

15.     On June 10, 2015, Asia Coal Energy Ventures Limited (**"ACE"**), a special purpose vehicle funded and supported by the Sinar Mas group of Indonesia (**"Sinar Mas"**) made a general offer for all the issued and paid up share capital of ARMS. As of the date hereof, ACE is a majority shareholder of ARMs. ACE and the BCE Group believe that if given sufficient time and a stable platform to do so, the uncertainties that currently exist in Indonesia, including the ongoing management disputes within the BCE Group and the bankruptcy petition filed in respect of Berau Coal, can be resolved in collaboration with Sinar Mas for the benefit of all stakeholders, including creditors of the BCE Group.

16.     As one of Indonesia's largest conglomerates with experience in the coal and power industries in Indonesia, there are few other Indonesian partners who have the capability to assist the BCE Group in resolving the challenges and uncertainties that exist, which are material impediments to the BCE Group in satisfactorily restructuring its financial indebtedness. While ARMs, ACE, Sinar Mas and BCE are confident that these issues can be resolved, it is imperative that the BCE Group be given time and stability to do so. Any unilateral creditor action would be value destructive and could potentially result in a substantially diminished recovery for the creditors of the BCE Group, including the holders of the 2015 Notes.

17.     The Foreign Debtor has commenced its restructuring process, preparing a restructuring framework and engaging in negotiations with numerous creditors, obtaining

4

standstill arrangements and working to renegotiate certain of its debt. As of the date hereof, the Foreign Debtor has: (a) an in-principle agreement with holders of a substantial amount of the 2015 Notes with respect to a restructuring of the BCE Group's indebtedness, including the obligations represented by the 2015 Notes, and (b) entered into a restructuring support agreement with holders holding a substantial amount of the 2015 Notes, pursuant thereto, the supporting noteholders agreed to, *inter alia*, refrain from taking any unilateral creditor action against any member of the BCE Group and to support and progress the restructuring efforts undertaken by the BCE Group. that embodies the terms of the agreement referred to in subsection (a) above and has the support of the legal and financial advisors of holders owning a substantial amount of the BCE Group's financial indebtedness, pursuant to which, all creditors that execute the restructuring support agreement agree to, *inter alia*, refrain from taking any unilateral action against any member of the BCE Group and to support and progress the restructuring efforts undertaken by the BCE Group, including the Foreign Debtor.

18.    In order for the Foreign Debtor and other companies within the BCE Group to achieve a meaningful recovery, a restructuring of BCE will have to be effected pursuant to restructuring processes available under Singapore law, Indonesian law and/or United States law.

19.    The recoveries of creditors of the Foreign Debtor and the BCE Group are likely to be materially greater in a restructuring in which the BCE Group continues to operate as a going concern when compared with the recoveries that would be received in a liquidation. There is a material risk that a liquidation of any member of the BCE Group, in particular BCE and/or Berau Coal, could result in the government of the Republic of Indonesia unilaterally terminating, revoking or amending the concession or license that has been

granted to Berau Coal which entitles it to carry out exploration and mining activities within specified regions in Kalimantan, Indonesia. If the concession is terminated, revoked or adversely amended as a result of a liquidation process being commenced against a member of the BCE Group, this could result in the BCE Group losing its material asset which would prevent it from operating as a going concern, resulting in a much lower recovery (if any) for all creditors of the BCE Group, including the holders of the 2015 Notes.

20.     If the cash flow and on-going operations of the BCE Group is jeopardized by the actions of holders of the 2015 Notes against the Foreign Debtor or BCE, the Berau Group will not be able to maintain operations and the restructuring of the Berau Group will be derailed.

21.     In order to prevent recovery or enforcement efforts by creditors that would jeopardize the BCE Group's and the Foreign Debtor's restructuring, on July 4, 2015 the Foreign Debtor initiated proceedings in the High Court of the Republic of Singapore (the "**Singapore Court**") pursuant to Section 210(10) of the Companies Act (Cap. 50) for an order imposing a moratorium on collection and enforcement activity against the Foreign Debtor, BCE and each member of the BCE Group which has guaranteed the Foreign Debtor's obligations under the 2015 Notes (collectively, the "**Singapore Proceeding**").

22.     On July 7, 2014, the Singapore Court entered an order in the Singapore Proceeding prohibiting for a period of six months the commencement or continuation of any action by any creditors against the Foreign Debtor and the guarantors of the debts of Foreign Debtor (including BCE), including, without limitation, proceedings for the recovery of a debt or damages by civil action, or proceedings by way of execution on a judgment (collectively, the "**Singapore Order**"). A certified, true and correct copy of the Singapore Order is attached as **Exhibit B**.

23.    Since the successful restructuring of the Foreign Debtor is dependent upon the successful restructuring of BCE, the Foreign Debtor requested, and the Singapore Court granted, a moratorium to BCE, the key subsidiary guarantors of the 2015 Notes within the BCE Group, as well as the Foreign Debtor.

24.    I have been appointed as the foreign representative of the Foreign Debtor in connection with this Chapter 15 case by the board of directors of the Foreign Debtor. A true and correct copy of the corporate resolution appointing me as Foreign Representative is attached as **Exhibit C**.

25.    As a result of the foregoing, to the best of my knowledge, information and belief, I am a person authorized to administer the reorganization of the Foreign Debtor's affairs and to represent the Foreign Debtor in these Chapter 15 cases. Therefore, I believe that I am a "foreign representative" within the meaning of § 101(24) of the Bankruptcy Code.

26.    To the best of my knowledge, information and belief, the Singapore Proceeding is a judicial proceeding, including an interim proceeding, under Singapore law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation. Accordingly, I believe that the Singapore Proceeding is a "foreign proceeding" within the meaning of § 101(23) of the Bankruptcy Code.

27.    The Foreign Debtor is incorporated under Singapore law and has had its registered office in Singapore since its incorporation through the present. As a result, I believe that the Foreign Debtor has its "center of main interests" in Singapore and, therefore the Singapore Proceeding should be recognized as a "foreign main proceeding" pursuant to § 1502(4) of the Bankruptcy Code.

28.    To the best of my knowledge, information and belief, the Singapore Proceeding is the only pending debt adjustment or insolvency proceeding of any kind involving the Foreign Debtor.

29.    As of the date hereof, an involuntary bankruptcy petition has been filed in the Central District Commercial Court of Jakarta in respect of Berau Coal by (the "**Indonesian Bankruptcy Petition**"). To the best of my knowledge, information and belief, save for the Singapore Proceeding and the Indonesian Bankruptcy Petition, there are no other pending debt adjustment or insolvency proceedings of any kind involving any other member of the BCE Group.

30.    A retainer has been paid on behalf of the Foreign Debtor to its counsel in the above-captioned Chapter 15 case, which is being maintained in a bank account in the United States. Other than the retainer funds, the Foreign Debtor does not have assets in the United States. The Foreign Debtor has no place of business in the United States.

31.    In the 2015 Notes Indenture, the Foreign Debtor, the Trustee and BCE consented to jurisdiction in New York in connection with any suit, action or proceeding arising out of or relating to the 2015 Notes. The 2015 Notes Indenture also provides that the 2015 Notes Indenture and the 2015 Notes will be governed by, and interpreted in accordance with, New York law.

32.    The Foreign Debtor is seeking the entry of an order granting provisional relief and enjoining creditors from initiating or continuing any collection efforts in the United States pending the hearing on the Foreign Debtor's petition for recognition of the Singapore Proceeding as a foreign main proceeding. The entry of an order granting such provisional relief to maintain the status quo is essential to the restructuring of the Foreign Debtor and will

8

prevent the Foreign Debtor from suffering irreparable harm as a result of any enforcement proceedings.

*[signature page follows]*

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the

United States of America that the foregoing statements are true and correct to the best of my

knowledge, information and belief.


Executed on July ___9th___, 2015
in Hong Kong, S.A.R People's Republic of China


Witness to the signature of

_Kin Chan_

_David Ravenscroft_

David G.J. Ravenscroft
Notary Public Hong Kong SAR
David Ravenscroft & Co.
Solicitors & Notaries

_____
Kin Chan
Foreign Representative

**EXHIBIT A**

# Kin Chan

Mr. Chan is the founding shareholder of Argyle Street Management Limited, and has been the Chief Investment Officer since 2002. He serves on the management boards of other ASM funds. He is also the Chairman of TIH Limited and a Director of OUE Limited, both listed on the Singapore Exchange ("SGX").

Mr. Chan was Chief Executive and Managing Director of Lazard Asia Limited from 2000 to 2001 and managed the firm's advisory business in Asia outside of Japan. Prior to joining Lazard, Mr. Chan was an Executive Director at Goldman, Sachs & Co. where he worked in Hong Kong, New York and Singapore from 1992 to 1999.

Mr. Chan has completed transactions in China, Hong Kong, India, Indonesia, Korea, Singapore and Thailand. The aggregate transaction size of all the deals that Mr. Chan has worked on exceeds US$15 billion. Mr. Chan has built strong relationships with a large number of relevant business people and organizations in many Asian countries. He has also developed an intimate understanding of how business is conducted in these countries.

Mr. Chan earned an A.B. degree from Princeton University and an MBA from the Wharton School of the University of Pennsylvania where he was a Palmer Scholar. Mr. Chan has a number of academic distinctions including a Rotary Scholarship, United World College Scholarship, 'Princeton University Class of 1941' Scholarship and Ford Motor Company Fellowship. He has published academic articles on the real estate market in Hong Kong and on the relations between United States auto-assemblers and their suppliers.

**EXHIBIT B**

# IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Case No.: HC/OS 630/2015

Doc No.: HC/ORC 4496/2015

Filed: 07-July-2015 07:33 PM

In the matter of Section 210 of the Companies Act (Cap. 50)

And

In the matter of Berau Capital Resources Pte Ltd (RC No. 201003049C)



Berau Capital Resources Pte Ltd
(Singapore UEN No. 201003049C)

...Applicant(s)

## ORDER OF COURT

Before:        Justice Andrew Ang in Chambers

Date of Order :  07-July-2015

Upon the application made by way of ex-parte Originating Summons No. 630 of 2015 coming on for hearing this day and upon reading the 1st Affidavit of Gamal Hendrawan Wanengpati, the 1st Affidavit of Kin Chan and the 1st Affidavit of Brandon Lawrence Gale, all filed on 4 July 2015 and the exhibits therein referred to, and upon hearing Counsel for the Company and Counsel for the creditors listed in Annex A,

It is ordered that:

1. Pursuant to Section 210(10) of the Companies Act (Cap. 50) (the "Act") and the inherent jurisdiction of the Court, for a period of 6 months from the filing of this Originating Summons, no action or proceeding in Singapore or elsewhere (including without limitation proceedings for the recovery of a debt or damages by civil action, by arbitration or by proceedings before the small claims tribunal; proceedings by way of execution on a judgment; proceedings to levy distress or proceedings in the nature of distress; winding up proceedings or proceedings to place Berau Capital Resources Pte. Ltd. (the "Company") under judicial management; proceedings to enforce or execute against the assets of the Company) shall be proceeded with, continued or commenced against the Company and/or the Parent Guarantor and/or any of the Subsidiary Guarantors (as set out in the Schedule hereto) for the enforcement of rights in equity or at law by any creditor of the Company except with the consent of the Company or by leave of this Honourable Court and, in the latter case in accordance with such terms as this Honourable Court may impose, subject to section 210(10) of the Act (the "Moratorium").

2. The Moratorium shall not restrain any party to the Restructuring Support Agreement entered into on around the date hereof between (among others) the Company, the Parent Guarantor and certain of their creditors from complying with their obligations thereunder and/or to provide reasonable support and assistance to the Company as contemplated in that agreement or prevent any holder (a "Holder") of the

2015 Notes (as defined in the 1st Affidavit of Gamal Hendrawan Wanengpati) or any trustee or agent acting on its behalf from taking any step or action required to ensure that such Holder (or any such trustee or agent) is able and/or entitled to participate and/or submit any proof of claim or vote in respect of the 2015 Notes in any suspension of payments, bankruptcy or other proceedings commenced against the Parent Guarantor or any Subsidiary Guarantor pursuant to Law Number 37 of 2004 of the Republic of Indonesia on Bankruptcy and Suspension of Payments.

3. Kin Chan (Passport No. KJ0397020) be designated as the Company's Foreign Representative within the meaning of Section 101(24) of the United States Bankruptcy Code and be authorised to apply for protection similar to the Moratorium in the United States of America if necessary.

4. The Company, any Creditor in attendance and any Holder be at liberty to apply for such further orders or directions as necessary.

5. Such further or other relief, orders or directions be given as this Honourable Court deems fit.

6. The terms of this Order shall not affect or concern anyone outside the jurisdiction of this Court until it is declared enforceable or is enforced by a Court in the relevant country and then they are to affect him only to the extent they have been declared enforceable or have been enforced UNLESS such person is a person who is subject to the jurisdiction of this Court; and

(i) has been given written notice of this order at his residence or place of business within the jurisdiction of this Court; and

(ii) is able to prevent acts or omissions outside the jurisdiction of this Court which constitute or assist in a breach of the terms of this Order.

7. The Company shall provide the Court and, upon request, any of the creditors listed in Annex A or any Holder or their solicitors on a monthly basis with a report on the progress of its restructuring efforts.

| 1 | Name of Document: | Schedule |
|   |                   | Schedule.pdf |

| 2 | Name of Document: | Annex A |
|   |                   | Annex A.pdf |

VINCENT HOONG
REGISTRAR
SUPREME COURT
SINGAPORE

## Schedule

**Parent Guarantor**:

PT Berau Coal Energy Tbk

**Subsidiary Guarantors**:

PT Armadian Tritunggal;

PT Berau Coal;

Empire Capital Resources Pte Ltd;

Winchester Investment Holdings PLC;

Aries Investments Limited;

Seacoast Offshore Inc.;

Maple Holdings Limited;

PT Banua Karsa Mitra; and

PT Energi Bara Sarana

**Annex A**

List of Creditors in Attendance

1.    Taconic Opportunity Master Fund L.P. (New York)

2.    DBS Bank Limited (Singapore)

3.    Merrill Lynch International (Hong Kong)

4.    Arkkan Capital Management Limited (Hong Kong)

5.    Finisterre Capital LLP (London)

6.    Serica Partners Asia Limited (Hong Kong)

7.    SSG Capital Partners III, L.P. (Hong Kong)

8.    Value Partners Greater China High Yield Income Fund (Hong Kong)

9.    Various BlackRock funds (see below) – each care of BlackRock (Singapore) Limited

| Fund Name |
| --- |
| BlackRock Asia Floating Rate Income Fund, a Series Trust of BlackRock Global Investment Trust |
| Arch Reinsurance Ltd |
| BlackRock Global Funds - Asian Tiger Bond Fund |
| BlackRock Absolute Return Bond Fund |
| BlackRock Multi-Asset Income - Emerging Market Credit Portfolio |
| BlackRock Strategic Income Opportunities Portfolio, a series of BlackRock Funds II |
| BlackRock Global Funds - Global High Yield Bond Fund |
| BlackRock Global Funds- Fixed Income Global Opportunities Fund |
| BlackRock Strategic Funds – BlackRock Global Absolute Return Bond Fund |
| BlackRock Multi-Asset Income Portfolio, a series of BlackRock Funds II |
| Master Total Return Portfolio of Master Bond LLC |
| R3 Capital Partners Master, L.P. |
| New York State Common Retirement Fund |

**EXHIBIT C**

**Berau Capital Resources Pte Ltd**
**Registration No. 201003049C**
**Incorporated in Singapore**
(the "**Company**")

**DIRECTORS' RESOLUTIONS IN WRITING PURSUANT TO ARTICLE 96 OF THE**
**COMPANY'S ARTICLES OF ASSOCIATION**

**APPOINTMENT AND AUTHORIZATION TO FILE CHAPTER 15 PETITION**

**NOTED** that:

1.   in order to prevent collection efforts that would impede the Company's restructuring, on July 4, 2015 the Company filed an application in the High Court of the Republic of Singapore (the "**Singapore Court**") pursuant to Section 210(10) of the Companies Act (Cap. 50) for an order granting a moratorium on collection activity and the moratorium order was granted by the Singapore Court on July 7, 2015;

2.   the Directors of the Company have determined that the filing of a voluntary petition for relief (the "**Chapter 15 Petition**") under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") is in the best interest of the Company in order to ensure the moratorium granted by the Singapore Court is recognised in the United States to ensure the enforcement of such moratorium order in the United States;

**RESOLVED** that:

3.   that the Company appoints Mr. Kin Chan (Passport No. KJ0397020) to serve as the foreign representative (the "**Foreign Representative**") of the Company, as such term is defined in section 101(24) of the Bankruptcy Code, in its chapter 15 case;

4.   that the Foreign Representative shall be, and hereby is, authorized to file a Chapter 15 Petition for relief under the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York or such other court as the Foreign Representative of the Company shall determine to be appropriate (the "**Bankruptcy Court**") and perform any and all such acts as are reasonable, advisable, expedient, convenient, proper or necessary to effect any of the foregoing;

5.   that the Foreign Representative shall be, and hereby is, authorized, directed and empowered on behalf of, and in the name of, the Company to: (a) execute, acknowledge, deliver and verify the Chapter 15 Petition and all other ancillary documents, and cause the Chapter 15 Petition to be filed with the Bankruptcy Court and make or cause to be made prior to execution thereof any modifications to the Chapter 15 Petition or ancillary documents as the Foreign Representative, in his discretion, deems necessary or desirable to carry out the intent and accomplish the purposes of these declarations (such approval to be conclusively established by the execution thereof by the Foreign Representative); (b) execute, acknowledge, deliver, verify and file or cause to be filed all petitions, schedules, statements, lists, motions, applications and other papers or documents necessary or desirable in connection with the foregoing; and (c) execute, acknowledge, deliver and verify any and all other documents necessary or appropriate in connection therewith or to administer the Company's Chapter 15 case in such form or forms as the Foreign Representative may approve;

6.   that the Foreign Representative shall be, and hereby is, authorized, directed and empowered on behalf of, and in the name of, the Company to: (a) administer and realize all or part of the Company's assets located in the United States in order to protect and preserve the value of such assets; (b) examine witnesses, take evidence or deliver information concerning the Company's assets, affairs, rights, obligations or liabilities; and (c) seek additional relief that may be available to a trustee in a United States bankruptcy proceeding, except for relief available under sections 522, 544, 545, 547, 548, 550 and 724(a) of the Bankruptcy Code;

7.   that any counsel (including additional special or local) selected by the Foreign Representative, if any, shall be, and hereby are, authorized, empowered and directed to represent the Foreign

Representatives, as duly authorized foreign representative of the Company in connection with any Chapter 15 case commenced by it under the Bankruptcy Code;

8.    that, in addition to the specific authorizations heretofore conferred upon the Foreign Representative, the Foreign Representative or his designees shall be, and each of them, acting alone, hereby is, authorized, directed and empowered, in the name of, and on behalf of, the Company, to take or cause to be taken any and all such further actions, to execute, acknowledge, deliver and verify any and all such agreements, certificates, instruments, amendments and other documents and to pay all expenses, including filing fees, in each case as in such officer's or officers' judgment shall be necessary or desirable in order to fully carry out the intent and accomplish the purpose of the declarations adopted herein;

9.    that all acts lawfully done or actions lawfully taken or to be taken by any officer or officers of the Company in connection with the implementation of these declarations in all respects are hereby ratified, confirmed an approved; and

10.    that the Foreign Representative is hereby authorized to certify and deliver, to any person to whom such certification and delivery may be deemed necessary or appropriate in the opinion of the Foreign Representative, a true copy of the foregoing declarations.

Dated this    9th    day of    July    , 2015.

Garval Hendrawan Wawaruguth

Arildy Pe Yang Wibon

Peri Azwar