Edward J. LoBello
Thomas R. Slome
Jil Mazer-Marino
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
1350 Broadway, Suite 501
New York, NY 10018
Phone: (212) 239-4999
Fax: (212) 239-1311
Attorneys for Kin Chan, as Foreign Representative

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

In re:

BERAU CAPITAL RESOURCES PTE LTD,

    Debtor in a Foreign Proceeding.

Chapter 15

Case No. _____

---

## DECLARATION OF NAIR SURESH SUKUMARAN IN SUPPORT OF: (I) VERIFIED PETITION UNDER CHAPTER 15; AND (II) APPLICATION FOR PROVISIONAL AND FINAL RELIEF FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING PURSUANT TO 11 U.S.C §§ 105(a), 1517, 1519, 1520, AND 1521

Nair Suresh Sukumaran, of full age, hereby declares:

1. I submit this declaration in support of the verified petition (the "**Verified Petition**") of Kin Chan, the duly authorized foreign representative (the "**Foreign Representative**") of the debtor captioned above (the "**Foreign Debtor**" or "**BCE**").

2. The Foreign Representative seeks entry of an order from this Court (a) granting provisional relief and enjoining creditors from initiating or continuing any collection efforts in the United States pending the hearing on the Foreign Debtor's petition for recognition of proceedings commenced in the High Court of the Republic of Singapore (the "**Singapore Court**") by the Foreign Debtor pursuant to Section 210(10) of the Singapore

Companies Act (Cap. 50) (the "**Singapore Proceeding**") as a foreign main proceeding and (b) recognizing the Singapore Proceeding as a foreign main proceeding pursuant to 11 U.S.C. §§ 1515 and 1517 and granting related relief.

3. I am a Director of Straits Law Practice LLC, a Singapore law firm. I am admitted to practice law in Singapore. Over the past 21 years, I have practised law in Singapore including in insolvency matters and restructuring transactions and litigation including matters involving SPH Mediaworks Ltd, a major Singapore broadcaster, in 2005; RGM Group Pte Ltd, a major media production group based in Singapore and Australia, from 2012 to date; Haruki Solutions Pte Ltd, a major distributor of computer hardware, from 2104 to date; and a commodities trading firm known as Victory Mercantile Corporation Pte Ltd in 2014. I regularly provide advice to clients on, among other things, matters relating to the insolvency and restructuring regimes under the Singapore Companies Act.

4. Unless otherwise specified, all facts set forth in this Declaration are based upon my personal knowledge from my assistance provided to the Foreign Debtor in connection with the Singapore Proceeding and my experience and knowledge of Singapore law. In preparing this Declaration, I have reviewed the following materials: (a) the Verified Petition; (b) the Chan Declaration (as hereinafter defined); and (c) the documents submitted by the Foreign Debtor in support of the Singapore Proceeding.

*Singapore Companies Act*

5. The Singapore Companies Act is a statute that provides for, among other things, schemes of arrangement under Singapore law. Schemes of arrangement commenced pursuant to the Singapore Companies Act by debtors facing financial difficulties can provide mechanisms for the orderly restructuring of debts and contractual relations between a debtor and its creditors.

6. Under Section 210 of the Singapore Companies Act, there are three main stages in the process to implement a scheme of arrangement to compromise the debts of a debtor: First, an application must be made to the Singapore Court for an order that one or more meetings of creditors be summoned. Secondly, the proposals must be put before these meetings and approved by the stipulated majority of each class of the creditors who are present and vote at the meeting. Thirdly, if (and only if) they are so approved by creditors, the Singapore Court may in its discretion sanction them having regard to the fairness and reasonableness of the scheme of arrangement. A true and correct copy of Section 210 of the Singapore Companies Act is attached as **Exhibit A**.

7. In the interim, before the Singapore Court approves a scheme of arrangement or compromise between a debtor and its creditors, an application may be made to the Singapore Court under section 210(10) of the Singapore Companies Act for an order that proceedings pending against a distressed company may be stayed. Section 210(10) states:

> **"Power of Court to restrain proceedings**
>
> (10) Where no order has been made or resolution passed for the winding up of a company and any such compromise or arrangement has been proposed between the company and its creditors or any class of such creditors, **the Court may**, in addition to any of its powers, on the application in a summary way of the company or of any member or creditor of the company **restrain further proceedings in any action or proceeding against the company** except by leave of the Court and subject to such terms as the Court imposes."
>
> (Emphasis added).

8.  The Singapore Court is empowered (among other things) to restrain, if necessary, a winding up petition that has been presented against the company, the continuation of actions or proceedings already commenced against the debtor and to grant a moratorium against proceedings which have yet to be commenced.

9.  The Singapore Proceeding was commenced to seek protection under Section 210(10) of the Singapore Companies Act.

*The Singapore Proceeding*

10.  On July 4, 2015, the Foreign Debtor commenced the Singapore Proceeding pursuant to Section 210(10) of the Singapore Companies Act to (among other things) restrain creditors from filing any action or proceeding against it, PT Berau Coal Energy Tbk (the "**Parent Guarantor**") and certain Subsidiary Guarantors, namely, PT Armadian Tritunggal (incorporated under the laws of the Republic of Indonesia), Berau Coal, Empire Capital Resources Pte. Ltd. (incorporated under the laws of the Republic of Singapore), Winchester Investment Holdings PLC (incorporated under the laws of the Republic of Seychelles), Aries Investments Limited (incorporated under the laws of the Republic of Malta), Seacoast Offshore Inc. (incorporated under the laws of the British Virgin Islands), Maple Holdings Limited (incorporated under the laws of Labuan), PT Energi Bara Sarana (incorporated under the laws of the Republic of Indonesia), and PT Banua Karsa Mitra (incorporated under the laws of the Republic of Indonesia), or any of their respective assets (collectively, the BCE, the Parent Guarantor and the Subsidiary Guarantors are the "**BCE Group**").

11.  On July 7, 2015 the Singapore Court granted the 210(10) application and entered an order for the BCE Group that, among other things, prohibit for a period of six months the commencement or continuation of any action by any creditors, including, without limitation, proceedings for the recovery of a debt or damages by civil action and proceedings

- 4 -

by way of execution on a judgment (collectively, the "**Singapore Order**"). A certified, true and correct copy of the Singapore Order is attached as Exhibit B to the accompanying Declaration of Kin Chan (the "**Chan Declaration**").

12. The Singapore Order is intended to provide the Foreign Debtor with time to implement a restructuring pursuant to restructuring processes available under the laws of Singapore, Indonesia and/or the United States, based on the restructuring terms that I understand have been agreed to between the Foreign Debtor and a substantial number of its creditors. I believe that this will also provide the Foreign Debtor sufficient time to apply to the Singapore Court under Section 210 of the Singapore Companies Act to propose a scheme of arrangement in order to implement its restructuring in Singapore.

*Qualifications for Recognition*

13. I am aware of the definition of "**foreign proceeding**" as set forth in 11 U.S.C. § 101(23). To the best of my knowledge, information and belief, the Singapore Proceeding is a judicial proceeding, including an interim proceeding, under Singapore law relating to insolvency or adjustment of debt in which the assets and affairs of the Foreign Debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation. In this case, the supervision of the court takes the form of the need for the court's sanction before a scheme of arrangement can be validly put into effect. Accordingly, I am advised by bankruptcy counsel to the Foreign Debtor and believe that the Singapore Proceeding is a "foreign proceeding" within the meaning of § 101(23) of the Bankruptcy Code.

14. I am aware of the definition of "**foreign representative**" as set forth in 11 U.S.C. § 101(24). The board of directors of the Foreign Debtor have appointed the Foreign Representative for the Foreign Debtor in connection with this Chapter 15 case. Under

- 5 -

Singapore law, unless otherwise directed by the court, boards of directors of companies that have commenced proceedings under section 210 of the Singapore Companies Act are authorised to continue to manage the affairs of the corporations, preserve the corporation's assets and administer its scheme of arrangement. The board of directors also has authority to undertake any restructuring processes that are consistent with the scheme of arrangement as the directors may deem to be necessary or desirable to enhance recovery for its creditors as a whole. Appointment of a foreign representative for purposes of Chapter 15 falls within the authorized duties of a corporation's board of directors. I believe that Kin Chan is the duly authorised Foreign Representative, as set forth in Exhibit C to the Chan Declaration.

*[signature page follows]*

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on  9/7/2015.
in the Republic of Singapore

_____
Nair Suresh Sukumaran

Notarised and Witnessed by

[signature]

9 July 2015

[Notary Public Seal: Goh Lin Ling, N2015/0096, 1 Apr 2015 – 31 Mar 2016, SINGAPORE]

# EXHIBIT A

TENTH SCHEDULE

ELEVENTH SCHEDULE Powers of judicial manager

TWELFTH SCHEDULE Contents of directors' statement

THIRTEENTH SCHEDULE Criteria for small company and small group

Legislative Source Key

Legislative History

Comparative Table

**Power to compromise with creditors and members**

210.—(1) Where a compromise or arrangement is proposed between a company and its creditors or any class of them or between the company and its members or any class of them, the Court may, on the application in a summary way of the company or of any creditor or member of the company, or, in the case of a company being wound up, of the liquidator, order a meeting of the creditors or class of creditors or of the members of the company or class of members to be summoned in such manner as the Court directs.

(2) A meeting held pursuant to an order of the Court made under subsection (1) may be adjourned from time to time if the resolution for adjournment is approved by a majority in number representing three-fourths in value of the creditors or class of creditors or members or class of members present and voting either in person or by proxy at the meeting.

(3) If a majority in number representing three-fourths in value of the creditors or class of creditors or members or class of members present and voting either in person or by proxy at the meeting or the adjourned meeting agrees to any compromise or arrangement, the compromise or arrangement shall, if approved by order of the Court, be binding on all the creditors or class of creditors or on the members or class of members, as the case may be, and also on the company or, in the case of a company in the course of being wound up, on the liquidator and contributories of the company.

(3A) Where the company is a banking corporation or licensed insurer, as the case may be, the Monetary Authority of Singapore established under the Monetary Authority of Singapore Act (Cap. 186) shall have the same powers and rights as a creditor of the company under the Companies Act including the right to appear and be heard before a Court in any proceedings under this section, but shall not have the right to vote at any meeting summoned under this section.

*[16/2011 wef 01/05/2011]*
*[1/2007 wef 31/03/2007]*
*[Act 11 of 2013 wef 18/04/2013]*

(4) Subject to subsection (4A), the Court may grant its approval to a compromise or arrangement subject to such alterations or conditions as it thinks just.

*[1/2007 wef 31/03/2007]*

(4A) The Court shall not approve any compromise or arrangement which has been proposed for the purposes of or in connection with any scheme referred to in section 212(1) under which the whole or any part of the undertaking or the property of a banking corporation incorporated in Singapore or licensed insurer incorporated in Singapore is to be transferred, unless the Minister charged with the responsibility for banking or insurance matters, as the case may be, has consented to the compromise or arrangement or has certified that his consent is not required.

*[16/2011 wef 01/05/2011]*
*[Act 11 of 2013 wef 18/04/2013]*

(5)  An order under subsection (3) shall have no effect until a copy of the order is lodged with the Registrar, and upon being so lodged, the order shall take effect on and from the date of lodgment or such earlier date as the Court may determine and as may be specified in the order.

*[12/2002]*

(6)  Subject to subsection (7), a copy of every order made under subsection (3) shall be annexed to every copy of the memorandum of the company issued after the order has been made, or, in the case of a company not having a memorandum, to every copy so issued of the instrument constituting or defining the constitution of the company.

(7)  The Court may, by order, exempt a company from compliance with the requirements of subsection (6) or determine the period during which the company shall so comply.

(8)  Where any such compromise or arrangement (whether or not for the purposes of or in connection with a scheme for the reconstruction of any company or companies or the amalgamation of any 2 or more companies) has been proposed, the directors of the company shall —

   (a)  if a meeting of the members of the company by resolution so directs, instruct such accountants or solicitors or both as are named in the resolution to report on the proposals and forward their report or reports to the directors as soon as possible; and

   (b)  make such report or reports available at the registered office of the company for inspection by the shareholders and creditors of the company at least 7 days before the date of any meeting ordered by the Court to be summoned as provided in subsection (1).

(9)  Every company which makes default in complying with subsection (6) or (8) and every officer of the company who is in default shall be guilty of an offence and shall be liable on conviction to a fine not exceeding $2,000.

*[15/84]*

**Power of Court to restrain proceedings**

(10)  Where no order has been made or resolution passed for the winding up of a company and any such compromise or arrangement has been proposed between the company and its creditors or any class of such creditors, the Court may, in addition to any of its powers, on the application in a summary way of the company or of any member or creditor of the company restrain further proceedings in any action or proceeding against the company except by leave of the Court and subject to such terms as the Court imposes.

(10A)  Where the terms of any compromise or arrangement approved under this section provides for any money or other consideration to be held by or on behalf of any party to the compromise or arrangement in trust for any person, the person holding the money or other consideration may, after the expiration of 2 years and shall before the expiration of 10 years from the date on which the money or other consideration was received by the person, transfer the money or other consideration to the Official Receiver.

*[Act 36 of 2014 wef 01/07/2015]*

(10B)  The Official Receiver shall —

   (a)  deal with any moneys received under subsection (10A) as if the moneys were paid to him under section 322; and

   (b)  sell or dispose of any other consideration received under subsection (10A) in such manner as he thinks fit and shall deal with the proceeds of such sale or disposal as if it

were moneys paid to him under section 322.

*[Act 36 of 2014 wef 01/07/2015]*

(11) In this section —

"arrangement" includes a reorganisation of the share capital of a company by the consolidation of shares of different classes or by the division of shares into shares of different classes or by both these methods;

"company" means any corporation or society liable to be wound up under this Act.

*[UK, 1948, s. 206; Aust., 1961, s. 181]*

## History for Provision '210 Power to compromise with creditors and members'.

| pr210-. | | | | | |
|---|---|---|---|---|---|
| 31/10/2006 | 31/03/2007 | 01/11/2007 | 01/05/2011 | 01/01/2012 | 19/11/2012 |
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 2006 RevEd | Amended Act 1 of 2007 | Amended Act 39 of 2007 | Amended Act 16 of 2011 | Amended S 718/2011 | Amended Act 2 of 2009 |
| 18/04/2013 | 18/04/2013 | 07/03/2014 | 01/07/2015 | 01/07/2015 | 01/07/2015 |
| ☐ | ☐ | ☐ | ▣ | ▣ | ▣ |
| Amended Act 10 of 2013 | Amended Act 11 of 2013 | Amended Act 5 of 2014 | Amended S 382/2015 | Amended Act 36 of 2014 | Amended S 383/2015 |