Edward J. LoBello
Thomas R. Slome
Jil Mazer-Marino
**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
1350 Broadway, Suite 501
New York, NY 10018
Phone: (212) 239-4999
Fax: (212) 239-1311
Attorneys for Kin Chan, as Foreign Representative

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| BERAU CAPITAL RESOURCES PTE LTD, | : | Case No._____ |
| | : | |
| Debtor in a Foreign Proceeding. | : | |
| | : | |

------------------------------------------

## APPLICATION FOR AN ORDER GRANTING PROVISIONAL RELIEF PURSUANT TO SECTIONS 105(a) AND 1519 OF THE BANKRUPTCY CODE

Petitioner, Kin Chan, the duly authorized foreign representative (the **"Foreign Representative"**) of the above-captioned debtor in a foreign proceeding (the **"Foreign Debtor"**), by and through his undersigned counsel, respectfully requests, pursuant to sections 105(a) and 1519 of title 11 of the United States Code (the **"Bankruptcy Code"**), entry of an order (the **"Provisional Order"**) substantially in the form attached hereto as **Exhibit A**, granting to the Foreign Debtor provisional injunctive and related relief (the **"Application"**).

In support of this Application, the Foreign Representative incorporates by reference (a) the Declaration of Kin Chan in Support of (I) the Verified Petition of Kin Chan, as Foreign Representative of the Foreign Debtor, for Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515 and 1517 and Relief Pursuant to 11 U.S.C. §§ 1520 and 1521, and (II)

Application for an Order Granting Provisional Relief, Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code (the **"Chan Declaration"**); (b) the Declaration of Nair Suresh Sukumaran, of Stairs Law Practice, LLC, who acts as Singapore Counsel to the Foreign Debtor (the **"Nair Declaration"**); and (c) the Memorandum of Law in Support of (I) the Verified Petition of Kin Chan, as Foreign Representative of the Foreign Debtor, for Recognition of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1515 and 1517 and Relief Pursuant to 11 U.S.C. §§ 1520 and 1521, and (II) Application for an Order Granting Provisional Relief, Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code (the **"Memorandum of Law"**), and represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

## BACKGROUND

2.      Berau Capital Resources Pte Ltd is incorporated under the laws of Singapore.

3.      The Foreign Debtor is a wholly-owned subsidiaries of PT Berau Coal Energy Tbk ("**BCE**").

4.      BCE has an interest, either directly or otherwise, in a total of 18 entities incorporated in various jurisdictions (the **"BCE Group"**).

5.      The BCE Group is in the business of the mining and export of thermal coal and is one of the largest exporters of thermal coal in the world.

6.     The financial and operational condition of the BCE Group has deteriorated in the last 2 years. This is, in part, directly attributable to the decrease in the global demand for coal, which resulted in a material drop in coal prices. The poor financial health of BCE has also been exacerbated by recent attempts to change management and disputes arising therefrom which has adversely effected the BCE Group.

7.     BCE's revenue and EBITDA have declined substantially as a result of the drop in coal prices.

8.     Although BCE and PT Berau Coal (the main operating subsidiary of the BCE Group) ("**Berau Coal**") have taken steps to reduce mining costs and optimize key assets in light of the current low coal price environment, including, *inter alia*, by negotiating with its mining contractors and other suppliers to reduce operational costs, moving coal production to pits that provide higher margins for the group and reducing the number of leased barges while at the same time increasing the number of barge cycles, these savings have not been sufficient to compensate for the decline in the selling price of thermal coal. Consequently, BCE Group is challenged in discharging its financial obligations to creditors, in particular under the 2015 Notes (as explained below).

9.     On February 9, 2010, the Foreign Debtor was incorporated by BCE as a special purpose vehicle to raise funds for and on behalf of the BCE Group. The Foreign Debtor relies entirely on BCE to discharge its payment obligations.

10.     The Foreign Debtor entered into an indenture dated July 8, 2010, pursuant to which the Foreign Debtor issued $350 million in 12.50% guaranteed senior secured notes due 2015 (the "**2015 Notes**"), in respect of which a further $100 million in principal amount was issued in August 2010 pursuant to a supplemental indenture dated August 24, 2010. The

3

Bank of New York Mellon is the trustee (the "**Trustee**") under the indenture for the 2015

Notes (the "**2015 Notes Indenture**"), that has been amended and supplemented from time to

time. The Foreign Debtor's obligations under the 2015 Notes are guaranteed by BCE (the

"**Parent Guarantor**"), PT Armadian Tritunggal (incorporated under the laws of the Republic

of Indonesia), Berau Coal, Empire Capital Resources Pte. Ltd. (incorporated under the laws

of the Republic of Singapore), Winchester Investment Holdings PLC (incorporated under the

laws of the Republic of Seychelles), Aries Investments Limited (incorporated under the laws

of the Republic of Malta), Seacoast Offshore Inc. (incorporated under the laws of the British

Virgin Islands), Maple Holdings Limited (incorporated under the laws of Labuan), PT Energi

Bara Sarana (incorporated under the laws of the Republic of Indonesia), and PT Banua Karsa

Mitra (incorporated under the laws of the Republic of Indonesia) (collectively the guarantors

identified in this paragraph other than the Parent Guarantor are the "**Subsidiary Guarantors**",

and collectively, with the Parent Guarantor, the "**Group Obligors**").

11.    BCE and BCR were unable to make the principal repayment in the amount of

$450 million due on July 8, 2015, under the 2015 Notes.

12.    Just over eight months ago, Houlihan Lokey was appointed by ARMS and the

BCE Group to assist in the formulation and implementation of a plan to restructure the debts

of the BCE Group, including the 2015 Notes.

13.    On June 10, 2015, Asia Coal Energy Ventures Limited ("**ACE**"), a special

purpose vehicle funded and supported by the Sinar Mas group of Indonesia ("**Sinar Mas**")

made a general offer for all the issued and paid up share capital of ARMs. As of July 7, 2015,

ACE is a majority shareholder of ARMs. In collaboration with Sinar Mas, ACE and the BCE

Group believes that if given sufficient time and a stable platform to do so, the uncertainties

that currently exist in Indonesia, including the ongoing management disputes within the BCE

4

Group and the bankruptcy petition filed in respect of Berau Coal, can be resolved for the benefit of all stakeholders, including creditors of the BCE Group.

14.    As one of Indonesia's largest conglomerates with experience in the coal and power industries in Indonesia, there are few other Indonesian partners who have the capability to assist the BCE Group in resolving the challenges and uncertainties that exist, which are material impediments to the BCE Group satisfactorily restructuring its financial indebtedness. While ARMs, ACE, Sinar Mas and BCE are confident that these issues can be resolved, it is imperative that the BCE Group be given time and stability to do so. Any unilateral creditor action would be value destructive and could potentially result in a substantially diminished recovery for the creditors of the BCE Group, including the holders of the 2015 Notes.

15.    As of the date hereof, the Foreign Debtor has an in-principle agreement with holders holding a substantial amount of 2015 Notes with respect to the terms of the restructuring of the BCE Group's indebtedness, including the 2015 Notes. On July 8, 2015, the Foreign Debtor entered into a restructuring support agreement with holders holding a substantial amount of the 2015 Notes, pursuant thereto, the supporting noteholders agreed to, *inter alia*, refrain from taking any unilateral creditor action against any member of the BCE Group and to support and progress the restructuring efforts undertaken by the BCE Group.

16.    In order for the Foreign Debtor and other companies within the BCE Group to achieve a meaningful recovery, a restructuring of BCE will have to be effected pursuant to restructuring processes available under Singapore law, Indonesian law and/or United States law.

17.    The recoveries of creditors of the Foreign Debtor and the BCE Group are likely to be materially greater in a restructuring in which the BCE Group continues to operate as a going concern when compared with the recoveries that would be received in a liquidation. There is a material risk that a liquidation of any member of the BCE Group, in particular BCE and/or Berau Coal could result in the government of the Republic of Indonesia unilaterally terminating, revoking or amending the concession or license that has been granted to Berau Coal which entitles it to carry out exploration and mining activities within specified regions in Kalimantan, Indonesia. If the concession is terminated, revoked or adversely amended as a result of a liquidation process being commenced against a member of the BCE Group, this could result in the BCE Group losing its material asset which would prevent it from operating as a going concern, resulting in a much lower recovery (if any) for all creditors of the BCE Group, including the holders of the 2015 Notes.

18.    If the cash flow and on-going operations of the BCE Group is jeopardized by the actions of holders of the 2015 Notes against the Foreign Debtor or BCE, the BCE Group will not be able to maintain operations and the restructuring of the BCE Group will be derailed.

19.    In order to prevent recovery or enforcement efforts by creditors that would jeopardize the BCE Group's and the Foreign Debtor's restructuring, on July 4, 2015 the Foreign Debtor initiated proceedings in the High Court of the Republic of Singapore (the "**Singapore Court**") pursuant to Section 210(10) of the Companies Act (Cap. 50) for an order imposing a moratorium on collection and enforcement activity against the Foreign Debtor, BCE and each member of the BCE Group which has guaranteed the Foreign Debtor's obligations under the 2015 Notes (collectively, the "**Singapore Proceeding**").

20.     On July 7, 2014, the Singapore Court entered an order in the Singapore Proceeding prohibiting for a period of six months the commencement or continuation of any action by any creditors against the Foreign Debtor and the guarantors of the debts of Foreign Debtor (including BCE), including, without limitation, proceedings for the recovery of a debt or damages by civil action, or proceedings by way of execution on a judgment (collectively, the "**Singapore Order**"). In particular, paragraph 1 of the Singapore Order states: "no action or proceeding in Singapore **or elsewhere** (including without limitation proceedings for the recovery of a debt or damages by civil action, by arbitration or by proceedings before the small claims tribunal; proceedings by way of execution on a judgment; proceedings to levy distress or proceedings in the nature of distress; winding up proceedings or proceedings to place the Company under judicial management; proceedings to enforce or execute against the assets of the Company) shall be proceeded with, continued or commenced against the Company and/or the Parent Guarantor and/or any of the Subsidiary Guarantors for the enforcement of rights in equity or at law by any creditor of the Company." (Emphasis added). The Singapore Order therefore has binding effect outside of Singapore, including in the United States, if and to the extent adopted or enforced by a United States' Court. A certified, true and correct copy of the Singapore Order is attached as Exhibit B to the Chan Declaration.

21.     Since the successful restructuring of the Foreign Debtor is dependent upon the successful restructuring of BCE, the Foreign Debtor requested, and the Singapore Court granted, a moratorium to BCE, and the Group Obligors, as well as the Foreign Debtor.

## **RELIEF REQUESTED**

22.     By this Application, the Foreign Representative respectfully seeks entry of an interim order, substantially in the form attached hereto as Exhibit A: (a) enjoining all entities

(as that term is defined in section 101(15) of the Bankruptcy Code) from engaging in collection activity or executing on the Foreign Debtor's assets within the territorial jurisdiction of the United States pending the hearing on the recognition of the Singapore Proceeding as a foreign main proceeding pursuant to 11 U.S.C. §§ 1515 and 1517 (the **"Recognition Hearing"**); (b) entitling the Foreign Representative and the Foreign Debtor to the full protections and rights enumerated under section 1519(a)(1)-(3) of the Bankruptcy Code pending the Recognition Hearing and (c) enjoining all entities from commencing or continuing, within the territorial jurisdiction of the United States, any action or proceeding against any entity including the Group Obligors in contravention of the Singapore Order.

## BASIS FOR RELIEF REQUESTED

23.    Section 1519(a) of the Bankruptcy Code permits the bankruptcy court to grant provisional relief in a Chapter 15 case pending a decision on the petition for recognition if such relief is "urgently needed to protect the assets of the debtor or the interest of the creditors."

24.    Pursuant to §1519(e), the standards, procedures and limitations applicable to an injunction apply to a request for the entry of provisional relief.

25.    Further, §105(a) allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

26.    Included in §105 "is the power to issue injunctions under appropriate circumstances." *In re Innua Canada Ltd.*, 2009 Bankr. LEXIS 994 at * 8 (Bankr. D.N.J. 2009) (granting foreign representative's application for provisional relief).

27.    In order to obtain a preliminary injunction, the moving party must first demonstrate that it is likely to suffer irreparable harm in the absence of the requested relief. See *Wilson v. Creditors' Comms. of Commodore Int'l Ltd. (In re Commodore Business Machines)*, 246 B.R. 476, 487 (S.D.N.Y. 2000). Once the likelihood of irreparable harm is established, the movant must prove "either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Id.*

28.    The relief sought by the Foreign Representative is urgently needed to prevent the Foreign Debtor from suffering irreparable harm as a result of any collection proceedings in the United States which would disrupt the Foreign Debtor's operations or restructuring and potentially risk the loss of its greatest assets, its right to the exploration, exportation and production of coal. Any litigation or enforcement proceedings commenced against the Foreign Debtor would deviate key management's attention from their exclusive focus of managing the business and operations of the Foreign Debtor, thereby disrupting their rehabilitation and restructuring efforts in respect of the Foreign Debtor.

29.    To allow the Foreign Debtor and other companies within the BCE Group time to formulate a viable restructuring plan, it is critical that the Foreign Debtor is protected from collection activity or execution on the Foreign Debtor's assets in the United States. As noted in the Chan Declaration, the 2015 Notes have matured and no grace period exists. In the 2015 Notes Indenture, the Foreign Debtor, BCE, PT Armadian Tritunggal, Berau Coal, Empire Capital Resources Pte. Ltd., Winchester Investment Holdings PLC, Aries Investments Limited, Seacoast Offshore Inc., Maple Holdings Limited, PT Energi Bara Sarana, and PT Banua Karsa Mitra and the Trustee consented to jurisdiction in New York in connection with any suit, action or proceeding arising out of or relating to the 2015 Notes. The 2015 Notes

Indenture also provides that it will be governed by, and interpreted in accordance with, New York law.

30.    Absent the relief requested, the cash flow of the BCE Group could be jeopardized by the actions of the holders of the 2015 Notes, against the Foreign Debtor or the Group Obligors.  If such actions or proceedings were commenced at this critical juncture in the BCE Group's restructuring, the BCE Group may not be able to maintain operations and its restructuring could be derailed.

31.    The appropriateness of provisional injunctive and related relief under similar circumstances has been recognized in several chapter 15 cases in this district.  *See, e.g., In re Bumi Investment Pte Ltd., et al*, Case No. 14-13296 (Bankr. S.D.N.Y. December 30, 2014), (granting injunctive relief in respect of non-debtor entities); *In re PT Berlian Laju Tanker Tbk*, Case No. 13-10901 (SMB) (Bankr. S.D.N.Y. March 29, 2013) (order granting provisional injunctive relief); *In re Chembulk New York Pte Ltd*, Case No. 12- 11007 (SMB) (Bankr. S.D.N.Y. March 23, 2012) (same); *In re PT. Arpeni Pratama Ocean Line TBK.,* Case No. 11-15691 (ALG) (Bankr. S.D.N.Y. Jan. 12, 2012) (same); *In re Compania Mexicana de Aviación, S.A. de C.V.*, Case No. 10-14182 (MG) (Bankr. S.D.N.Y. Aug. 18, 2010) (same); *In re Japan Airlines Corp.,* Case No. 10-10198 (JMP) (Bankr. S.D.N.Y. Jan. 19, 2010) (same); *In re Int'l Banking Corp. B.S.C.*, Case No. 09-17318 (SMB) (Bankr. S.D.N.Y. Dec. 18, 2009) (same); *In re Daewoo Logistics Corp.,* Case No. 09-15558 (BRL) (Bankr. S.D.N.Y. Sept. 24, 2009) (same); *In re Atlas Shipping,* Case No. 09-10314 (MG) (Bankr. S.D.N.Y. Jan. 27, 2009) (same).  Each of the above-referenced Orders is attached to the *Memorandum Of Law Of Kin Chan, As Foreign Representative Of The Above-Captioned Debtor In A Foreign Proceeding, For (i) Recognition Of Foreign Main Proceeding Pursuant To 11 U.S.C.  §§ 1515 and 1517,*

*(ii) Relief Pursuant To 11 U.S.C. §§ 1520 and 1521, and (iii) Provisional Relief Pursuant To 11 U.S.C. §§ 105 (a) and 1519* as Exhibits A and C-J.

32.     In addition, the Foreign Representative is likely to succeed in showing entitlement to recognition of the Singapore Proceeding as a foreign main proceeding.  As established by the Chan Declaration and the Nair Declaration, all of the statutory elements for recognition of the Foreign Proceeding under section 1517 of the Bankruptcy Code are satisfied as a matter of law.

33.     As noted above, the moratorium granted under the Singapore Order extends to actions against the Group Obligors as well as the Foreign Debtor, because the successful restructuring of the Foreign Debtor is dependent upon the successful restructuring of the BCE Group.

34.     Accordingly, the Foreign Representative requests that the provisional stay also be extended to the Group Obligors.  It has been long-recognized that pursuant to section 105(a) of the Bankruptcy Code, the bankruptcy court may enjoin third-party actions against non-debtor entities when the claims threaten to thwart or frustrate the debtor's reorganization efforts.  *See In re The 1031 Tax Group, LLC,* 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008).  Here, the court should grant comity to the Singapore Order, which extended the stay to the Group Obligors, just as the district court in *CT Investment Mgmt Co., LLC v. Carbonell,* 2012 U.S. Dist. LEXIS 3356 (S.D.N.Y. 2012), extended the stay to a non-debtor affiliate of the foreign debtors (granting comity to Mexican court order which extended stay to non-debtor guarantors of foreign debtor's debt) and *In re Bumi Investment Pte Ltd, et al*, Case No. 14-13296 (Bankr. S.D.N.Y. December 30, 2014), extending the stay to guarantors of the foreign debtors (granting comity to a Singapore court order which extended a stay to non-debtor guarantors of the foreign debtors' debt).

35.    Based on the foregoing, and for the reasons cited in this Memorandum of Law and the facts stated in the Chan Declaration and the Nair Declaration, the Foreign Representative respectfully requests that the Court grant the relief requested.

## NOTICE

36.    The Foreign Representative proposes to serve copies of the Scheduling Order within three business days of its entry, via mail, directed to all persons or bodies authorized to administer foreign proceedings of the Foreign Debtor, all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code, all parties to litigation pending in the United States in which any of the Foreign Debtor is a party at the time of the filing of the chapter 15 Petition, the United States Trustee and such other entities as this Court may direct.

37.    The Foreign Representative further proposes to provide copies of the Application, the Chan Declaration, the Nair Declaration and the Memorandum of Law upon request by any party in interest to Edward J. LoBello, Esquire, Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, NY 10018.

38.    The Foreign Representative believes that such notice and service constitutes reasonable and proper notice under the circumstances, and that no other or further notice is necessary or appropriate.

## NO PRIOR REQUEST

39.    No previous request for the relief requested herein has been made to this or any other court.

## WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(C)

40.    Bankruptcy Rule 7065 expressly provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." To the extent Rule 65 of the Federal Rules of Civil Procedure is applicable, the Foreign Representative believes that the security requirements imposed by Rule 65(c) are unwarranted under the circumstances and, accordingly, respectfully requests a waiver of such requirements pursuant to Bankruptcy Rule 7065.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that the Court enter the Provisional Order (a) granting to the Foreign Debtor provisional injunctive and related relief; and (b) granting the Foreign Representative such other and further relief as the Court deems just and proper.

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: */s/ Edward J. LoBello*_____
    Edward J. LoBello
    Thomas R. Slome
    Jil Mazer-Marino
    1350 Broadway, Suite 501
    New York, NY 10018
    Phone: (212) 239-4999
    Fax: (212) 239-1311

    *Attorneys for Kin Chan,*
    *as Foreign Representative*

Dated: July 10, 2015

## VERIFICATION

Kin Chan, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America as follows:

I am the duly appointed foreign representative for the Foreign Debtor and have full authority to verify the foregoing Application.

I have read the foregoing Application, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ____Jul 9, 2015_____
In Hong Kong, S.A.R People's Republic of China

_____
Kin Chan
Foreign Representative

**<u>EXHIBIT A</u>**

**Provisional Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
| BERAU CAPITAL RESOURCES PTE LTD, | : | Case No._____ |
|  | : |  |
| Debtor in a Foreign Proceeding. | : |  |

------------------------------------------

## ORDER GRANTING PROVISIONAL RELIEF

This matter coming before the Court on the application (the **"Application"**)[1] of petitioner, Kin Chan, the duly authorized foreign representative (the **"Foreign Representative"**) of the above-captioned debtor in a foreign proceeding (the **"Foreign Debtor"**), pursuant to sections 105(a) and 1519 of title 11 of the United States Code (the **"Bankruptcy Code"**), for the entry of an order granting provisional injunctive and related relief; and the Court having reviewed the Application, the Chan Declaration, the Nair Declaration and the Memorandum of Law, and having considered the statements of counsel with respect to the Application at a hearing before the Court (the **"Hearing"**); and appropriate and timely notice of the filing of the Application and the Hearing having been given; and no other or further notice being necessary or required; and the Court having determined that the legal and factual bases set forth in the Application and all other pleadings and proceedings in this case establish just cause to grant the relief ordered herein, and after due deliberation therefore,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

---

[1] Unless otherwise defined herein, all capitalized words used herein shall have the meanings ascribed to them in the Application.

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

C.     The Foreign Representative has demonstrated a substantial likelihood of success on the merits that (i) the Foreign Debtor is subject to a pending "foreign main proceeding" as that term is defined in section 1502(4) of the Bankruptcy Code, (ii) the Foreign Representative is a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code, and (iii) all statutory elements for recognition of the Foreign Proceeding are satisfied in accordance with section 1517 of the Bankruptcy Code.

D.     The commencement or continuation of any action or proceeding, whether judicial, administrative, regulatory or sounding in arbitration, with respect to the Foreign Debtor or the property of the Foreign Debtor that is within the territorial jurisdiction of the United States, including, without limitation, any action commenced in contravention of the Singapore Proceeding or orders of the Singapore Court, should in each case be enjoined pending and through the date of the hearing to consider recognition of the Singapore Proceeding as a foreign main proceeding (the "Final Recognition Hearing"), and the relief requested either (i) will not cause an undue hardship to any party in interest or (ii) any hardship to a party in interest is outweighed by the benefits of the relief requested.

E.      It has been clearly shown that unless this Order issues, the Foreign Debtor will suffer immediate and irreparable injury, loss or damage for which there is no adequate remedy at law. Further, unless this Order issues, the Foreign Debtor's assets located in the United States could be subject to efforts by creditors to control, possess, or execute upon such assets and such efforts have a material risk of resulting in the Foreign Debtor suffering immediate and irreparable injury, loss, or damage by, among other things, (i) interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, (ii) interfering with the Foreign Debtor's efforts to administer its estate and restructure its operations pursuant to the Foreign Proceeding, and (iii) undermining the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors and interest holders.

F.      The interests of the public will be served by entry of this Order.

G.      The Foreign Representative and the Foreign Debtor are entitled to the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

**NOW, THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:**

1.      While this Order is in effect, all entities (as that term is defined in section 101(15) of the Bankruptcy Code) are hereby enjoined from:

(a)    executing against the Foreign Debtor's assets;

(b)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim which action is in any way related to, or would interfere with, the administration of the Foreign Debtor's estate in the Singapore Proceeding;

(c)     the enforcement of a judgment against the Foreign Debtor or against property of the Foreign Debtor's estate;

(d)     any act to obtain possession of property of the Foreign Debtor's estate or of property from the Foreign Debtor's estate or to exercise control over property of the Foreign Debtor's estate;

(e)     any act to create, perfect, or enforce any lien against property of the Foreign Debtor's estate;

(f)     any act to collect, assess, or recover a claim against the Foreign Debtor;

(g)     transferring, relinquishing or disposing of any property of the Foreign Debtor to any person or entity other than the Foreign Representative; and

(h)     the setoff of any debt owing to the Foreign Debtor against any claim against the Foreign Debtor (collectively, clauses (a) through (h), the **"Enjoined Conduct"**);

*provided, however*, in each case, that such injunction shall be effective solely within the territorial jurisdiction of the United States.

2.     While this Order is in effect, the Foreign Representative and the Foreign Debtor shall be entitled to the full protections and rights enumerated under section 1519(a)(1)-(3) of the Bankruptcy Code, including:

(a)     entrusting the administration or realization of all or part of the Foreign Debtor's assets located in the United States to the Foreign Representative in order to protect and preserve the value of assets that are susceptible to devaluation or otherwise in jeopardy;

(b)    the protection prohibiting other entities from transferring, encumbering or otherwise disposing of any assets of the Foreign Debtor;

(c)    the right and power to examine witnesses, take evidence or deliver information concerning the Foreign Debtor's assets, affairs, rights, obligations or liabilities; and

(d)    the right and power to seek additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550 and 724(a) of the Bankruptcy Code.

3.    While this Order is in effect, all entities (as that term is defined in section 101(15) of the Bankruptcy Code) shall be enjoined from commencing or continuing, within the territorial jurisdiction of the United States, any action or proceeding against any of the Group Obligors in contravention of the Singapore Order.

4.    Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, or (b) staying the exercise of any rights that are not subject to stay arising under section 362(a) of the Bankruptcy Code pursuant to paragraph (6), (7), (17), or (27) of section 362(b) of the Bankruptcy Code or pursuant to section 362(o) of the Bankruptcy Code.

5.    With respect to any Enjoined Conduct in which the Foreign Debtor may have an interest that may become known to the Foreign Representative after the date of entry of this Order (each a **"Subsequent Claim"**):

(a)    when informed of such Subsequent Claim, counsel for the Foreign Representative shall serve upon the holder of such claim a copy of the Supporting Documents and this Order or any extension thereof; and

(b)    on not less than five business days' notice to U.S. Counsel (defined below), the holder of a Subsequent Claim may file a motion seeking an order of the Court vacating or modifying the injunction entered in this proceeding with respect to such Subsequent Claim, and any such request shall be the subject matter of a hearing on a date to be scheduled by the Court.

6.      Any party in interest may make a motion seeking relief from, or modification of, this Order, by filing a motion on not less than five (5) business days' written notice to Edward J. LoBello, Esquire, Meyer, Suozzi, English & Klein, P.C., 1350 Broadway, Suite 501, New York, NY 10018, and the Court will hear such motion on a date to be scheduled by the Court.

7.      The Application, this Order, and the Supporting Documents shall be made available by the Foreign Representative upon request to U.S. Counsel.

8.      The Foreign Representative shall serve copies of this Order in accordance with the provisions of that certain Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice (the **"Scheduling Order"**).  Service in accordance with the provisions of the Scheduling Order shall constitute fair and sufficient service and notice.

9.      Pursuant to Bankruptcy Rule 7065, the provisions of Federal Rule 65(c) are hereby waived, to the extent applicable.

10.     Nothing contained in this Order should be construed as limiting or restricting the ability of a creditor to take action to the extent permitted by the Singapore Order.

11.    Unless otherwise ordered by the Court, this Order shall remain in effect until the earlier of (a) entry of an order recognizing the Singapore Proceeding as a foreign main proceeding in accordance with section 1517 of the Bankruptcy Code or (b) the dismissal or closing of these chapter 15 proceedings.

12.    This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:_____, 2015
      New York, New York

      _____
      UNITED STATES BANKRUPTCY JUDGE

1065730

**<u>EXHIBIT B</u>**

Singapore Order

**IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/OS 630/2015

Doc No.: HC/ORC 4496/2015

Filed: 07-July-2015 07:33 PM



In the matter of Section 210 of the Companies Act (Cap. 50)

And

In the matter of Berau Capital Resources Pte Ltd (RC No. 201003049C)

Berau Capital Resources Pte Ltd
(Singapore UEN No. 201003049C)

...Applicant(s)

**ORDER OF COURT**

Before:        Justice Andrew Ang in Chambers

Date of Order :  07-July-2015

Upon the application made by way of ex-parte Originating Summons No. 630 of 2015 coming on for hearing this day and upon reading the 1st Affidavit of Gamal Hendrawan Wanengpati, the 1st Affidavit of Kin Chan and the 1st Affidavit of Brandon Lawrence Gale, all filed on 4 July 2015 and the exhibits therein referred to, and upon hearing Counsel for the Company and Counsel for the creditors listed in Annex A,

It is ordered that:

1. Pursuant to Section 210(10) of the Companies Act (Cap. 50) (the "Act") and the inherent jurisdiction of the Court, for a period of 6 months from the filing of this Originating Summons, no action or proceeding in Singapore or elsewhere (including without limitation proceedings for the recovery of a debt or damages by civil action, by arbitration or by proceedings before the small claims tribunal; proceedings by way of execution on a judgment; proceedings to levy distress or proceedings in the nature of distress; winding up proceedings or proceedings to place Berau Capital Resources Pte. Ltd. (the "Company") under judicial management; proceedings to enforce or execute against the assets of the Company) shall be proceeded with, continued or commenced against the Company and/or the Parent Guarantor and/or any of the Subsidiary Guarantors (as set out in the Schedule hereto) for the enforcement of rights in equity or at law by any creditor of the Company except with the consent of the Company or by leave of this Honourable Court and, in the latter case in accordance with such terms as this Honourable Court may impose, subject to section 210(10) of the Act (the "Moratorium").

2. The Moratorium shall not restrain any party to the Restructuring Support Agreement entered into on around the date hereof between (among others) the Company, the Parent Guarantor and certain of their creditors from complying with their obligations thereunder and/or to provide reasonable support and assistance to the Company as contemplated in that agreement or prevent any holder (a "Holder") of the

2015 Notes (as defined in the 1st Affidavit of Gamal Hendrawan Wanengpati) or any trustee or agent acting on its behalf from taking any step or action required to ensure that such Holder (or any such trustee or agent) is able and/or entitled to participate and/or submit any proof of claim or vote in respect of the 2015 Notes in any suspension of payments, bankruptcy or other proceedings commenced against the Parent Guarantor or any Subsidiary Guarantor pursuant to Law Number 37 of 2004 of the Republic of Indonesia on Bankruptcy and Suspension of Payments.

3. Kin Chan (Passport No. KJ0397020) be designated as the Company's Foreign Representative within the meaning of Section 101(24) of the United States Bankruptcy Code and be authorised to apply for protection similar to the Moratorium in the United States of America if necessary.

4. The Company, any Creditor in attendance and any Holder be at liberty to apply for such further orders or directions as necessary.

5. Such further or other relief, orders or directions be given as this Honourable Court deems fit.

6. The terms of this Order shall not affect or concern anyone outside the jurisdiction of this Court until it is declared enforceable or is enforced by a Court in the relevant country and then they are to affect him only to the extent they have been declared enforceable or have been enforced UNLESS such person is a person who is subject to the jurisdiction of this Court; and

(i) has been given written notice of this order at his residence or place of business within the jurisdiction of this Court; and

(ii) is able to prevent acts or omissions outside the jurisdiction of this Court which constitute or assist in a breach of the terms of this Order.

7. The Company shall provide the Court and, upon request, any of the creditors listed in Annex A or any Holder or their solicitors on a monthly basis with a report on the progress of its restructuring efforts.

| 1 | Name of Document: | Schedule |
|---|---|---|
| | | Schedule.pdf |

| 2 | Name of Document: | Annex A |
|---|---|---|
| | | Annex A.pdf |

VINCENT HOONG
REGISTRAR
SUPREME COURT
SINGAPORE

## Schedule

**Parent Guarantor**:

PT Berau Coal Energy Tbk


**Subsidiary Guarantors**:

PT Armadian Tritunggal;

PT Berau Coal;

Empire Capital Resources Pte Ltd;

Winchester Investment Holdings PLC;

Aries Investments Limited;

Seacoast Offshore Inc.;

Maple Holdings Limited;

PT Banua Karsa Mitra; and

PT Energi Bara Sarana

## Annex A

List of Creditors in Attendance

1.    Taconic Opportunity Master Fund L.P. (New York)

2.    DBS Bank Limited (Singapore)

3.    Merrill Lynch International (Hong Kong)

4.    Arkkan Capital Management Limited (Hong Kong)

5.    Finisterre Capital LLP (London)

6.    Serica Partners Asia Limited (Hong Kong)

7.    SSG Capital Partners III, L.P. (Hong Kong)

8.    Value Partners Greater China High Yield Income Fund (Hong Kong)

9.    Various BlackRock funds (see below) – each care of BlackRock (Singapore) Limited

| Fund Name |
|---|
| BlackRock Asia Floating Rate Income Fund, a Series Trust of BlackRock Global Investment Trust |
| Arch Reinsurance Ltd |
| BlackRock Global Funds - Asian Tiger Bond Fund |
| BlackRock Absolute Return Bond Fund |
| BlackRock Multi-Asset Income - Emerging Market Credit Portfolio |
| BlackRock Strategic Income Opportunities Portfolio, a series of BlackRock Funds II |
| BlackRock Global Funds - Global High Yield Bond Fund |
| BlackRock Global Funds- Fixed Income Global Opportunities Fund |
| BlackRock Strategic Funds – BlackRock Global Absolute Return Bond Fund |
| BlackRock Multi-Asset Income Portfolio, a series of BlackRock Funds II |
| Master Total Return Portfolio of Master Bond LLC |
| R3 Capital Partners Master, L.P. |
| New York State Common Retirement Fund |